IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| STACEY LYNN SULADIE, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Civil Action No. 12-933 |
| CAROLYN COLVIN,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

AMBROSE, Senior District Judge

## OPINION and ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 6 and 11). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 7 and 12). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Defendant's Motion for Summary Judgment (Docket No. 11) and granting Plaintiff's Motion for Summary Judgment. (Docket No. 6).

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. On or about February 21, 2003, Plaintiff applied for SSI. (R. 65-67). In her application, she alleged that since October 1, 2002, she had been disabled due to alcoholism, acid reflux, mental problems, possible bipolar disorder, back

---

[1] Carolyn Colvin became the Acting Commissioner of Social Security on February 14, 2013 and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

problems, and nerve damage to her legs. (R. 76). Administrative Law Judge ("ALJ") James Bukes held a hearing on May 26, 2004, at which Plaintiff was represented by counsel. (R. 319-354). Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 348-353). In a decision dated August 27, 2004, the ALJ found that Plaintiff could perform a significant range of light work and, therefore, was not disabled under the Social Security Act. (R. 16-26). Plaintiff requested reconsideration of the ALJ's determination and, on July 15, 2005, the Appeals Council affirmed the determination. (R. 8-10).

On September 19, 2005, Plaintiff filed a Complaint in this Court at civil action number 05-1279, for review of the Commissioner's final determination disallowing her SSI claim. The parties filed cross motions for summary judgment. On March 20, 2006, Magistrate Judge Robert Mitchell issued a Report and Recommendation recommending that the parties' motions be denied without prejudice and that the matter be remanded to the Commissioner for further development of the extent of Plaintiff's mental condition and whether or not it prevented her from being gainfully employed. On April 10, 2006, I entered an Order adopting Judge Mitchell's Report and Recommendation and remanding the matter to the Commissioner.

On May 15, 2006, the Appeals Council entered an Order remanding the matter to the ALJ. In that Order, the Appeals Council directed that the ALJ associate a subsequent SSI claim that Plaintiff had filed on September 1, 2004, with the current claim. (R. 430).[2] The Appeals Council directed that the ALJ issue a new decision on the associated claims. Id. ALJ Bukes held a second hearing on August 22, 2007, at which Plaintiff was represented by counsel. (R. 684A-710). Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational

---

[2] Plaintiff protectively filed another application for SSI benefits on September 1, 2004, alleging an inability to work since October 1, 2002 due to mental problems, bipolar, and an inability to concentrate or stay on task. (R. 590-593, 610). That application was denied on November 29, 2004, and, on February 2, 2005, Plaintiff requested a hearing by an ALJ. (R. 572-577).

expert also was present at the hearing and testified. (R. 706-708). On November 29, 2007, the ALJ issued a decision finding that Plaintiff was able to perform light work subject to some limitations and restrictions, that she could perform several jobs that exist in significant numbers in the national economy, and that, therefore, she was not disabled at step 5 of the sequential evaluation process. (R. 374-395). On May 7, 2012, the Appeals Council denied Plaintiff's exceptions to the ALJ's decision. (R. 355-57). Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 6 and 11). The issues are now ripe for my review.

## II.    LEGAL ANALYSIS

### A.    STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998).

3

Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision

with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

B. **WHETHER THE ALJ IMPROPERLY DISREGARDED THE MEDICAL OPINIONS OF PLAINTIFF'S TREATING PHYSICIANS AND EXAMINING PHYSICIAN**

Plaintiff first argues that the reports of all of her treating psychiatrists and her treating psychologist clearly support the conclusion that she is disabled, and that the ALJ erroneously failed to provide a sufficient basis for declining to afford those opinions greater weight. After careful consideration, I agree.

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. § 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect

> expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Social Sec. Admin., No. 10-2517, 2010 WL 5078238, at *5 (3d Cir. Dec. 14, 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009).

It is undisputed that at least three treating sources opined that Plaintiff had mental limitations that would prohibit her from any employment. (R. 210-215; 252-257; 307-312; 442-447; 505-508). In a questionnaire dated June 3, 2003 (R. 210-215), Plaintiff's then treating therapist, Margaret Porton, and treating psychiatrist, Randon Simmons, at the Irene Stacy Community Mental Health Center, opined that Plaintiff's likelihood of employment was highly improbable because of, inter alia, her prolonged periods of depression, anxiety, poor memory, poor concentration, and labile mood. The report further indicated that Plaintiff had moderate restrictions of activities of daily living; marked restrictions in maintaining social functioning; frequent deficiencies of concentration, persistence, and pace resulting in failure to complete tasks in a timely manner; and continual episodes of decompensation or deterioration in work or work-like settings. (R. 210-215). Plaintiff received ongoing treatment at Irene Stacy from at least January 2003 through November 24, 2003.

In a similar questionnaire dated May 25, 2004, treating psychiatrist Shoukry Matta opined that Plaintiff was unable to obtain and sustain full-time employment due to her panic attacks; difficulty staying on task; mood swings; difficulty with stress and new situations; and difficulty

being around others (both familiar and unfamiliar). (R. 307-312). Dr. Matta stated that Plaintiff had marked restrictions of activities of daily living; extreme restrictions in maintaining social functioning; constant deficiencies of concentration, persistence, and pace resulting in failure to complete tasks in a timely manner; and repeated (four or more) episodes of decompensation or deterioration in work or work-like settings. (R. 311-312). Dr. Matta treated Plaintiff from January 5, 2004 until at least March 2006, including five visits within the five-month span prior to his May, 2004 report. (R. 237-239; 307-316; 459-468; 549-556; 660-667).

On May 17, 2004, treating psychologist Dorothy Paul likewise concluded that Plaintiff could not sustain full-time employment because of her chronic mood swings, frequent panic and anxiety attacks, and chronic depression. (R. 252-257). Paul stated that Plaintiff had marked restrictions of activities of daily living; extreme restrictions in maintaining social functioning; frequent deficiencies of concentration, persistence, and pace resulting in failure to complete tasks in a timely manner; and repeated episodes of decompensation or deterioration in work or work-like settings. Id. at 257. In a similar questionnaire completed on November 29, 2004, Paul reached the same conclusion regarding Plaintiff's capacity for work. (R. 442-447). The only difference in the second questionnaire was that Paul found Plaintiff to be moderately, as opposed to markedly, restricted in activities of daily living. (R. 447). Paul treated Plaintiff from April 19, 2004 until at least November 29, 2004, including six sessions prior to the May 17, 2004 questionnaire. (R. 252-266; 442-458).

The ALJ admits that the limitations in functioning identified by Plaintiff's treating sources, if accepted, would result in a finding of disability. Indeed, the ALJ concedes that such limitations are medically equal to the Paragraph B criteria for Listings 12.04 and 12.06. (R. 378-380). The ALJ, however, declined to afford the treating source opinions significant weight because he found that they were inconsistent with and/or unsubstantiated by the evidence of record. (R. 379).

7

After careful review, I disagree that the ALJ's conclusions in this regard are supported by substantial evidence.

For example, the ALJ discredits the severity of functioning found by Dr. Simmons and therapist Porton in their June 2003 report on the grounds that those findings are not corroborated by other records from the Irene Stacy facility including a February 2003 Psychiatric Evaluation, and medication check entries dated April, May, August, and November 2003. (R. 379) (citing Exhibits 4F, 13F, and 16F). An examination of those documents, however, does not demonstrate any such inconsistency. The February 13, 2003 report (R. 146-148) summarizes Plaintiff's initial psychiatric evaluation at the Irene Stacy facility. The report reflects a diagnosis of Dysthymic Disorder and states that Plaintiff reported "unstable moods at times feeling depressed/irritable and other times feeling high anxiety with panic attacks." Plaintiff described "low energy, low motivation and also difficulty falling asleep." Id. Plaintiff stated that she occasionally will have a "day that she feel[s] 'okay' but most days she has variable moods." Id. This diagnosis and symptoms are consistent with the reasons given in June 2003 for Plaintiff's inability to work.

Although the February 2003 mental status exam also reflected that Plaintiff spoke and acted appropriately on the day of the examination, such observations are not inconsistent with an inability to work in this case. See, e.g., Brownawell v. Comm'r of Soc. Security, 554 F.3d 352, 356-57 (3d Cir. 2008); Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000) (noting that "[f]or a person . . . who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic") Kangail v. Barnhart, 454 F.3d 627, 629 (7th Cir. 2006) (patient's normal behavior during office visit does not contradict finding of severe mental illness; bipolar disorder is episodic). Similarly, to the extent notations in Plaintiff's medication checks of April, May, August, and November 2003 suggest that Plaintiff's

8

symptoms were controlled with medication, such observations are not indicative of an ability to sustain full-time employment. See, e.g., Brownawell, 554 F.3d at 355-56; Morales, 225 F.3d at 319 (observations that claimant with anxiety disorder was "stable and well controlled with medication" during treatment did not support medical conclusion that he was able to return to work); Bauer v. Astrue, 532 F.3d 606, 608-09 (7th Cir. 2008) (fact that claimant can perform some activities of daily living and work on some days while medicated is not inconsistent with finding of overall inability to hold full-time job).[3]

The ALJ similarly declares that the treatment notes of Dorothy Paul and Dr. Matta do not substantiate the severity of the functioning deficits indicated in their assessments. For the reasons set forth above, however, a review of those notes does not demonstrate any such inconsistency. (R. 237-238; 263-266; 459-468; 549-556; 660-667).[4] The fact that Paul's assessment of Plaintiff's limitations in activities of daily living improved from marked to moderate between May and November, 2004, likewise is not indicative of an ability to work as Paul continued to opine that Plaintiff could not sustain full-time employment and that Plaintiff manifested extreme difficulties in maintaining social functioning and frequent deficiencies of concentration, persistence, and pace. (R. 442-447). Again, the ALJ admits that, if fully

---

[3] It is questionable whether the medication check records actually reflect such stability. The April 2003 medication check record states, inter alia, that Plaintiff could not tolerate her starting dose of Effexor due to feeling high/giddy and nauseous; that she still felt depressed most days, that she had high anxiety and impaired concentration; and that she wasn't sleeping consistently. In response, Plaintiff's medication was switched to Zoloft. (R. 233). The May 2003 record indicates a reduction in Plaintiff's dosage of Zoloft due to nausea. Plaintiff reported relief from her mood symptoms on the lower dose but "initial response versus sustained response" was discussed with her. (R. 655). The August 2003 record notes fairly stable mood and sleep but continued anxiety. (R. 654). In November 2003, Plaintiff reported that her Zoloft "seemed like it quit working" and was prescribed Lexapro. (R. 653).

[4] Paul's psychotherapy notes from April 2004 reflect that Plaintiff reported problems with depression, anxiety, alcohol, and abusive men, and sought weekly treatment for depression, anxiety, and abuse. Sessions also focused on low self-esteem and loneliness. (R. 263-265). At the May 6, 2004 session, Plaintiff reported feeling tired and depressed. (R. 266). Paul's assessments indicate that Plaintiff continued to receive bi-weekly to weekly treatment through November 2004. (R. 442). Matta's notes indicate that Plaintiff demonstrated a labile affect; impaired judgment and insight; poor self-image and self-esteem; low frustration level; and obsessive/compulsive thoughts and behavior. (R. 238).

9

credited, both of Paul's assessments would compel a conclusion that Plaintiff's impairments met or equaled a listed impairment. (R. 379).

The ALJ rejected the opinions of Dr. Simmons, Dr. Matta, and Dorothy Paul in favor of the contrary opinion of T. David Newman, Ph.D., a one-time consultative examiner who examined Plaintiff at the ALJ's request on July 16, 2007 and concluded that Plaintiff's mental impairments had no effect on her ability to understand, remember, or carry out instructions; or to respond appropriately to supervision, co-workers, and work pressures in a work setting. (R. 390-392; 460-474). Considering the medical evidence as a whole, however, Dr. Newman's assessment should not have carried greater weight than the opinions of Plaintiff's treating providers. As set forth above, no less than three treating sources, all of whom treated Plaintiff regularly over a prolonged period of time, concluded that Plaintiff could not sustain full-time employment. Even though Dr. Newman also examined Plaintiff, Plaintiff's treating sources were the only medical professionals able to provide a detailed, longitudinal picture of her mental impairments. 20 C.F.R. § 416.927(c)(2). This consideration is particularly important in this case given the episodic nature of Plaintiff's bipolar disorder and other mental impairments. See Daniels v. Colvin, No. 1:12-cv-00316-SEB-MJD, 2013 WL 3776515, at *6 (S.D. Ind. July 16, 2013) ("Because of the episodic nature of bipolar disorder in particular, isolated evidence of higher functionality does not contradict longitudinal evidence of lower functionality."); Kangail, 454 F.3d at 629 (because bipolar disorder is episodic, observations of normal behavior during office visits do not contradict finding of inability to work); Bauer, 532 F.3d at 608-09; 20 C.F.R. § 416.927(c)(2) (treating sources may bring a unique perspective to the medical evidence that cannot be obtained from the reports of an individual consultative examination).

Consistency is another important factor in determining how to weigh medical opinions. 20 C.F.R. §416.927(c)(4). In this regard, Dr. Newman's assessment is inconsistent with, inter

alia, the assessments of Plaintiff's treating sources and with another examining physician, Dr. Robert Eisler.[5] The fact that Dr. Newman's opinion is clearly in the minority when compared with the record as a whole is another reason it should not be considered substantial evidence. See Morales, 225 F.3d at 320 ("[A] single piece of evidence is not substantial if . . . it is overwhelmed by other evidence – particularly that offered by a treating physician.").[6]

In short, after examining relevant factors including the length, nature, and extent of the treatment relationship; and the supportability and consistency of the medical opinions of record, I find that the ALJ erred in discrediting the opinions of Plaintiff's treating mental health providers and granting greater weight to the findings of one-time consultative examiner, Dr. Newman.[7]

## C. WHETHER THE ALJ ERRED IN CONCLUDING THAT CLAIMANT DID NOT MEET A LISTING IN APPENDIX I, SUBPART P, REGULATION 4, OR ERRED IN DETERMINING PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY

In step three of the analysis set forth above, the ALJ must determine if the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. Jesurum v. Secretary of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995). An

---

[5] On August 8, 2007 (less than one month after Dr. Newman), psychiatrist Robert L. Eisler performed a one-time psychiatric examination of Plaintiff at her counsel's request and concluded that she suffered from bipolar reaction with psychosis and fibromyalgia. He assigned Plaintiff a GAF score of 30 and opined that her prognosis was poor and that she would be unemployable for a year or more. R. 505-506. Among other things, Dr. Eisler stated that due to the symptoms of her bipolar disorder, Plaintiff had poor to no ability to maintain attention or concentration at a job; poor to no capacity to understand, remember, and carry out complex job instructions; and poor to no ability to behave in an emotionally stable manner or relate predictably in social situations. (R. 507-508). The ALJ discounted Dr. Eisler's opinion on the grounds it was unsubstantiated by his clinical findings and ratings of Plaintiff's capacity for work-related mental activities. (R. 392). He also suggested there was an "inference of secondary gain" surrounding Dr. Eisler's evaluation. (R. 393).

[6] This reasoning also applies to the extent the ALJ relied on the conclusions of non-examining state agency consultant, Ray Milke, Ph.D. (R. 380). Even Dr. Milke, however, found some degree of limitation, including marked difficulties in maintaining social functioning. (R. 669-684).

[7] Plaintiff also challenges the ALJ's evaluation of the evidence related to limitations resulting from her physical impairments. ECF No. 7 at 22-23, 27-28. After careful consideration of Plaintiff's arguments and review of all record evidence in this regard, I concur with this Court's prior ruling and find that the ALJ's conclusions related to Plaintiff's physical impairments and resulting limitations are supported by substantial evidence.

applicant is *per se* disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. Burnett v. Commissioner, 220 F.3d 112, 119 (3d Cir. 2000).

Plaintiff argues that her mental health impairments meet and satisfy the requirements of Listing 12.04 (Affective Disorders) and/or 12.06 (Anxiety Related Disorders), 20 C.F.R. pt. 404, subpt. P, app.1 §§ 12.04, 12.06. Affective Disorders under Listing 12.04 are characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. The required level of severity for these disorders is met when the requirements in both A and B of the Listing are satisfied, or when the requirements in part C of the Listing are satisfied. As to Anxiety-related Disorders under Listing 12.06, anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

Here, the parties agree that Plaintiff met the requirements of Part A of both listings and that part C of the Listings does not apply. The only argument is whether Plaintiff satisfied part B of the Listings. Part B is identical in both listings and requires that a claimant's impairment result in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06. As set forth above, the ALJ acknowledges in his report that Plaintiff's treating health sources indicated significant limitations in functioning that,

if credited, would be medically equal to the paragraph B criteria. (R. 379). As also set forth above, the ALJ failed to give proper weight to these treating source opinions. Had the ALJ afforded the treating source opinions appropriate weight, a finding that Plaintiff met Listing 12.04 and/or 12.06 would have been warranted.

Even if the ALJ's Step 3 analysis was proper, however, his subsequent findings with respect to Plaintiff's residual functional capacity were not. In this regard, the ALJ found that Plaintiff retained the residual functional capacity to perform light work except that standing and walking were limited to 3 hours during an 8-hour workday. The ALJ accounted for some mental limitations by further limiting her to simple instructions; simple decision-making; and avoidance of: direct interaction with the public, intensive supervision, travel to unfamiliar places, a high degree of stress, and assembly line pace work. R. 382-393. As set forth above, however, the ALJ erroneously disregarded the overwhelming record evidence from Plaintiff's treating physicians that her mental limitations, including her inability to stay on task or maintain regular attendance due to the episodic nature of her condition, precluded her from sustaining any gainful employment.[8]

## D. **WHETHER REMAND OR REVERSAL IS APPROPRIATE**

In short, the extensive medical record, wrongly rejected by the ALJ, is substantial evidence that Plaintiff suffers from a severe mental disability that renders her unable to engage in substantial gainful activity. See Morales, 225 F.3d at 310. The remaining question is whether I should remand this case to the Commissioner for further administrative proceedings or reverse

---

[8] Among other things, the vocational expert at Plaintiff's second hearing testified that there would not be any employment for an individual who would miss three days of work a month and/or who would be off task ten minutes of every hour. (R. 707-708). All of Plaintiff's treating sources opined that Plaintiff had marked to extreme limitations in concentration, persistence, and pace; that her attendance would vary depending on her mood; and that her ability to stay on task, sustain a routine, or attend to a task from beginning to end was irregular at best.

the Commissioner's finding that Plaintiff is not disabled and award benefits. It is well-established that the decision to award benefits:

> should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits. When faced with such cases, it is unreasonable for the court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would only result in further delay in the receipt of benefits.

Gilliland, 786 F.2d at 184.

In this case, the administrative record is well-developed. Plaintiff has had two hearings before the same ALJ, two petitions to the appeals council, and two appeals to this Court. The disability determination already has taken over ten years, and the record is unlikely to change. As set forth above, substantial evidence in the record indicates that Plaintiff is disabled and entitled to receive benefits without further extended delay. For all of these reasons, I find that further administrative proceedings are unnecessary and that an award of benefits is appropriate. See Brownawell, 554 F.3d at 357; Morales, 225 F.3d at 320; Gilliland, 786 F.2d at 185; Podedworny, 745 F.2d at 222-23.

### III. CONCLUSION

For all of the above reasons, Plaintiff's Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied.[9] This case is remanded to the Commissioner solely for the purpose of calculating the amount of SSI benefits owed to Plaintiff for the period of time commencing on October 1, 2002. An appropriate Order follows.

---

[9] In light of my findings herein, I need not consider Plaintiff's alternative arguments alleging bias and/or hearsay.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STACEY LYNN SULADIE,           )
                               )
                 Plaintiff,    )
                               )
         vs.                   )   Civil Action No.   12-933
                               )
CAROLYN COLVIN, Acting Commissioner )
of Social Security,            )
                               )
                 Defendant.    )

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 4th day of September, 2013, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 6) is granted and Defendant's Motion for Summary Judgment (Docket No. 11) is denied. This case is remanded to the Commissioner solely for the purpose of calculating the amount of SSI benefits owed to Plaintiff for the period of time commencing on October 1, 2002.

                                BY THE COURT:

                                /s/ Donetta W. Ambrose
                                Donetta W. Ambrose
                                U.S. Senior District Judge